UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY POLL,                              )        CASE NO. 3:16CV2061
                                        )
                Plaintiff,              )
                                        )
        v.                              )        MAGISTRATE JUDGE
                                        )        GEORGE J. LIMBERT
                                        )
NANCY A. BERRYHILL[1],                  )
ACTING COMMISSIONER OF SOCIAL           )
SECURITY ADMINISTRATION,                )        MEMORANDUM OPINION
                                        )        AND ORDER
                Defendant.              )
                                        )

        Plaintiff Mary Poll ("Plaintiff") requests judicial review of the final decision of the

Commissioner of Social Security Administration ("Defendant") denying her applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.

In her brief on the merits, filed on November 21, 2016, Plaintiff asserts that the administrative

law judge ("ALJ") erred by: (1) finding that she did not meet the requirements of Listing

12.05C; and (2) relying on vocational expert ("VE") testimony that was inconsistent with the

Dictionary of Occupational Titles ("DOT"). ECF Dkt. #15. Defendant filed a response brief on

January 18, 2017. ECF Dkt. #17. On February 1, 2017, Plaintiff filed a reply brief. ECF Dkt.

#18.

        For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the

instant case in its entirety with prejudice.

## I.   PROCEDURAL HISTORY

        Plaintiff filed her applications for DIB and SSI in May 2013. ECF Dkt. #12 ("Tr.") at

225-35.[2] The claims were denied initially and upon reconsideration. _Id._ Following the denial,

_____

        [1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security,
replacing Carolyn W. Colvin.

        [2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as
a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the
.PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the
page number assigned in the .PDF mirrors the page printed on each page of the Transcript, rather than
the page number assigned when the Transcript was filed in the CM/ECF system.

Plaintiff requested a hearing before an ALJ, which was held on March 16, 2015.  *Id.* at 40.  On April 15, 2015, the ALJ denied Plaintiff's applications for DIB and SSI.  *Id.* at 14. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1.  Accordingly, the decision issued by the ALJ on April 15, 2015, stands as the final decision.

On August 17, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  Plaintiff filed a brief on the merits on November 21, 2016.  ECF Dkt. #15. Defendant filed a response brief on January 18, 2017.  ECF Dkt. #17.  On February 1, 2017, Plaintiff filed a reply brief.  ECF Dkt. #18.

## II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In the decision issued on April 15, 2015, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  Tr. at 20. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2011, the alleged onset date.  *Id.*  The ALJ then stated that Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees with a history of bilateral knee arthroscopies; diabetes mellitus; hypertension; hyperlipidemia; bilateral carpal tunnel syndrome with a history of bilateral carpal tunnel release procedures; obesity; attention deficit disorder/attention deficit hyperactivity disorder ("ADD/ADHD"); dysthymic disorder; major depression; borderline intellectual functioning/mild mental retardation; reading disorder; and mathematics disorder.  *Id.*

Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 21.  When making this finding, the ALJ discussed Listing 12.05C, stating that Plaintiff did not meet the criteria of Listing 12.05C because she did not have a valid verbal, performance, or full scale IQ of sixty through seventy and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  *Id.* at 24.  The ALJ indicated that although Plaintiff demonstrated a verbal IQ score of sixty-eight and a full scale IQ score of sixty-five, along with additional impairments,

she did not meet the requirements of Listing 12.05C for a number of reasons. *Id.* First, the ALJ stated that the preamble of Listing 12.05C required that evidence must support a finding that there were intellectual deficits prior to the age of twenty-two. *Id.* The ALJ then indicated that the IQ scores were obtained when Plaintiff was forty-nine years old. *Id.* Additionally, the ALJ determined that Plaintiff did not meet the requirement of deficits in adaptive functioning, as she was able to: obtain a driver's license; maintain income above substantial gainful activity levels for approximately fifteen years; raise two children; maintain her home independently; manage her finances; and use the Internet. *Id.* For these reasons, the ALJ found that Plaintiff did not meet the requirements of Listing 12.05C. *Id.*

After considering the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations: occasional postural activities such as crouching, crawling, stooping, kneeling, and climbing; limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks; instructions should be verbally explained and work should not require reading, writing, or more than basic mathematics; pace and productivity should not be dictated by an external source over which she had no control, such as an assembly line or conveyor belt; the ability to make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting that was repetitive from day to day with few and expected changes; and no contact with the public, but she may have occasional interactions with supervisors and coworkers. Tr. at 25.

After discussing Plaintiff's RFC, the ALJ indicated that Plaintiff was unable to perform any past relevant work. Tr. at 31. The ALJ noted that Plaintiff was a younger individual on the alleged disability onset date, and subsequently changed age category to closely approaching advanced age. *Id.* Continuing, the ALJ stated that Plaintiff had a limited education, was able to communicate in English, and that the transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled. *Id.* at 32. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Accordingly, the ALJ found

that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 1, 2011, the alleged disability onset date, through the date of the decision. *Id.* at 33.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

## V.   ANALYSIS

### A.   Listing 12.05C

Plaintiff asserts that the ALJ erred in finding that she did not meet Listing 12.05C. ECF Dkt. #15 at 8-12. The portion of 20 C.F.R. Part 404, Subpart P, Appendix 1, setting forth Listing 12.05C reads:

> Intellectual disability refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports the onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> > C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Specifically, Plaintiff takes issue with the ALJ's finding that she did not meet Listing 12.05C because the evidence did not show adaptive deficits prior to age twenty-two. ECF Dkt. #15 at 7-8.

-5-

First, Plaintiff asserts that the ALJ recognized that she met the IQ score requirement of Listing 12.05C. ECF Dkt. #15 at 8 (citing Tr. at 24). Plaintiff claims that despite acknowledging her IQ scores, the ALJ reasoned that the scores did not provide evidence of intellectual deficits prior to age twenty-two since the scores were obtained when Plaintiff was forty-nine.[3] *Id.* at 8-9. Continuing, Plaintiff avers that a diagnosis of mental retardation is not a prerequisite to establishing disability pursuant to Listing 12.05C. *Id.* at 9-10. Plaintiff then states that Richard Litwin, Ph.D.:

> Diagnosed [her] with mild mental retardation (as well as reading disorder, mathematics disorder, ADHD, and major depression) which is by definition Dr. Litwin's opinion that, in fact, Plaintiff has adaptive deficits and that they are sufficient to support a diagnosis of mental retardation. The ALJ neither acknowledged or addressed Dr. Litwin's opinion in this respect.

ECF Dkt. #15 at 10.

Continuing, Plaintiff argues that she has demonstrated adaptive deficits prior to age twenty-two "by any definition," noting that the Social Security Administration ("SSA") had declined to endorse any particular definition. ECF Dkt. #15 at 10. Plaintiff, following the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, states that a finding of adaptive deficits requires:

> [S]ignificant limitations in at least two of the following domains: communication, self-care, home living, social and interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.

*Id.* at 11. Plaintiff then takes issue with the reasons provided by the ALJ for finding that she did not demonstrate the requisite deficits in adaptive functioning, namely because she: was able to obtain a driver's license; maintain income above substantial gainful activity levels for approximately fifteen years; raise two children; maintain her home; manage her finances; and use the Internet. *Id.* (citing Tr. at 24). Plaintiff then cites a memorandum released by the SSA

---

[3]When making this assertions, Plaintiff incorrectly cites the Supreme Court of the United States when claiming that an individual's IQ score is presumed to remain stable over time in the absence of evidence of a change in intellectual functioning. *See* ECF Dkt. #15 (citing *Heller v. Doe*, 509 U.S. 312 (1993). Defendant correctly points out that the statement cited by Plaintiff was actually from *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001). There is no Sixth Circuit presumption that an individual's IQ remains stable over time. *See McMillan v. Comm'r of Soc. Sec.*, No 1:10-cv-00308, 2012 WL 90264, at *6 (W.D. Mich. Jan. 11, 2012).

that she claims cautions against the consideration of typical daily activities when evaluating adaptive functioning in cases within the IQ scores falling within the range contemplated by Listing 12.05C. *Id.* (citing ECF Dkt. #18-1).[4]

Moreover, according to Plaintiff, the medical evidence supports a finding of significant deficits in her adaptive functioning as she testified that she: cannot count change and relies on her husband to manage her finances; had problems reading and writing, and was no longer able to read "longer" words; and could follow a recipe if it was "easy to read." ECF Dkt. #15 at 12 (citing Tr. at 69-70, 73). Plaintiff also asserts that neurological testing revealed that she had: third grade reading, word recognition, and math abilities; and significant difficulty with spelling, reading, comprehension, forming logical arguments and grammatically correct sentences, and performing multiplication and division. *Id.* (citing Tr. at 955-56). Plaintiff also indicates that Dr. Litwin found that her low IQ and aptitude level would make her a poor candidate for GED certification, that she would need help completing applications and paperwork and that her work pace would be "very slow." *Id.* (citing Tr. at 957). Continuing, Plaintiff states that Dr. Litwin did not recommend that Plaintiff take a teleworker training program due to her low aptitude levels and opined that she may need case management help as she "may struggle with decision making and problem solving on her own." *Id.* at 12-13 (citing Tr. at 957). Plaintiff also notes that she completed a week of work at Goodwill through Ohio Rehabilitation Services, and while there she was able to perform a simple task adequately, but was unable to organize shelves to employer standards and exhibited memory problems while attempting to perform this task. *Id.* at 13 (citing Tr. at 1049). Continuing, Plaintiff states that her only past relevant work was as an assembler, an unskilled job, and she was fired from this job due to confusion and difficulty concentrating. *Id.* Plaintiff also indicates that towards the end of her employment she had to be reminded how to perform tasks on a weekly basis. *Id.*

---

[4]Plaintiff cites to the memorandum in her brief, however, Defendant apparently had difficulty locating the memorandum and Plaintiff acknowledged in her reply that it may be difficult to find a copy. ECF Dkt. #15 at 12; ECF Dkt. #17 at 14-15; EC Dkt. #18 at 6. For the convenience of all parties, the Court cites to the attachment filed by Plaintiff with her reply brief containing the memorandum. The memorandum is discussed at greater length below.

Next, Plaintiff asserts that courts have considered the issue of the relevance of a claimant's work experience when evaluating disability under Listing 12.05C and have held that an analysis which precludes disability on the basis of the ability to work in the past improperly reads an additional requirement into Listing 12.05C. ECF Dkt. #15 at 14. Plaintiff avers that the fact that a claimant has worked in the past does not preclude the application of Listing 12.05C. *Id.* Continuing, Plaintiff argues that to the extent the ALJ relies on Plaintiff's possession of a driver's license to discredit her deficits in adaptive functioning, the SSA had cautioned against using common everyday activities to preclude a diagnosis of intellectual disability under Listing 12.05C. *Id.* at 15.

Defendant contends that substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or medically equal Listing 12.05C. ECF Dkt. #17 at 7. Continuing, Defendant asserts that Plaintiff had failed to satisfy the threshold issue of demonstrating subaverage intellectual functioning with deficits in adaptive functioning initially manifesting before age twenty-two. *Id.* at 8. Defendant correctly asserts that the Sixth Circuit has established the precedent that Listing 12.05 cannot be equaled without evidence of onset before the age of twenty-two. *Id.* (citing *Hayes v. Comm'r of Soc. Sec.*, 357 Fed.Appx. 672, 677 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Burcham v. Astrue*, 2012 WL 6094125 (N.D. Ohio Dec. 7, 2012)). Additionally, Defendant acknowledges that a claimant is not required to produce an IQ score obtained prior to the age of twenty-two, but must introduce evidence that adaptive deficiencies arose during the developmental period. *Id.* Next, Defendant asserts that there is no Sixth Circuit presumption that an IQ remains stable over time. ECF Dkt. #17 at 9.

Substantial evidence supports the ALJ's conclusion that Plaintiff has failed to present evidence supporting a finding that there were intellectual deficits prior to the age of twenty-two. *See* Tr. at 24. The IQ scores relied upon by Plaintiff in her attempt to satisfy the criteria of Listing 12.05C were obtained when she was forty-nine years old. As far as evidence relating back prior to the date Plaintiff reached twenty-two years of age, Plaintiff relies on the statement that she "attended school to the 11th grade and was enrolled in Special education services 'for

every subject' throughout her academic career." ECF Dkt. 15 at 8. This assertion by Plaintiff cites to her hearing testimony, where she indicated that she had been in special education classes all through her schooling, and statements made during an August 2013 psychological evaluation, where she stated she had been in special education classes since the sixth grade. *Id.* (citing Tr. at 48, 736). Plaintiff cites no additional evidence, medical or otherwise, to support a finding that she had intellectual deficits prior to the age of twenty-two. The Sixth Circuit has "never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Comm'r of Soc. Sec.*, 357 Fed.Appx. 672, 677 (6th Cir. 2009) (citing *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001) ("The only evidence in the record pertaining to this issue is that Foster left school after completing ninth grade, but why Foster did not continue her studies is unclear.")). Accordingly, Plaintiff's sole reliance on her academic record is insufficient to establish the onset of intellectual deficits prior to the age of twenty-two.

It appears that Plaintiff relied on the proposition that a persons IQ is presumed to remain stable over time in the absence of evidence of a change in the claimant's intellectual functioning to support her position that the onset of her intellectual deficiency occurred prior to age twenty-two by citing the IQ scores obtained when she was forty-nine. *See* ECF Dkt. #15 at 9. However, as pointed out by Defendant, the Sixth Circuit has not held that there is a presumption that a claimant's IQ remains stable over time. ECF Dkt. #17 at 9 (citing *McMillan*, 2012 WL 90264 at *6). In her reply brief, Plaintiff recognizes the error and then restates that a diagnosis of mental retardation or intellectual disability is not a necessary prerequisite to satisfy Listing 12.05. ECF Dkt. #18 at 5. Plaintiff's argument misses the mark. The issue is not one of a diagnosis, of lack thereof, of mental retardation, but, rather that Plaintiff has failed to show support for the conclusion that intellectual deficits were present prior to the age of twenty-two.

Moreover, substantial evidence supports the ALJ's finding that Plaintiff did not meet the requirement that she show evidence of deficits in adaptive functioning. *See* Tr. at 24. The ALJ indicated that Plaintiff was able to obtain a driver's license, maintain income above substantial gainful activity levels for approximately fifteen years, raise two children, maintain her home

-9-

independently, manage her own finances, and use the Internet. Tr. at 24. Plaintiff contends that the SSA has warned against using the factors considered by the ALJ, citing the aforementioned memorandum issued by the SSA for the following proposition:

> Use care when looking at the issue of adaptive functioning in cases with Intelligence Quotient (IQ) scores falling within the range for listing 12.05 Intellectual Disability. The ability to drive, engaging in common everyday activities, and previous employment do not preclude a diagnosis of Intellectual Disability, and do not necessarily preclude a finding of disability under listing 12.05.

ECF Dkt. #15 at 12 (citing ECF Dkt. #18-1 at 2).

The undersigned recognizes that the ALJ cited Plaintiff's ability to drive, some common everyday activities, and her previous employment. However, the memorandum relied upon by Plaintiff does not state that reliance on these factors is improper, but rather states that these activities "do not preclude a diagnosis of Intellectual Disability" and "do not necessarily preclude a finding of disability under listing 12.05." ECF Dkt. #18-1 at 2. The ALJ considered these factors, and found that Plaintiff was not under an intellectual disability and did not meet the requirements of Listing 12.05C. As the ALJ cited substantial evidence for the conclusion reached in the decision regarding Plaintiff's adaptive functioning, this was not error.

Plaintiff further asserts:

> An analysis which precludes consideration of disability pursuant to Listing 12.05C on the basis of ability to work in past in effect reads (improperly) an additional requirement into 12.05C that the claimant's adaptive functioning must be disabling in and of itself. The truth is even though a claimant has worked in the past, this fact does not preclude application of Listing 12.05C.

ECF Dkt. #15 at 13-14 (internal citations omitted). The ALJ did not find that Plaintiff did not meet the requirements of Listing 12.05C because she had worked in the past. Rather, the ALJ considered the fact that Plaintiff was able to maintain income above substantial gainful activity levels for fifteen years when addressing her adaptive functioning. This was not error. Consideration of Plaintiff's work history is relevant not only to the ALJ's determination regarding Plaintive adaptive functioning, as it also provides insight as to whether she had intellectual deficits prior to age twenty-two.

-10-

Plaintiff fails to show that her intellectual deficits were present prior to the age of twenty-two, and thus is unable to meet the requirements of Listing 12.05C. Likewise, Plaintiff fails to show that the ALJ's decision is not supported by substantial evidence.

## B. VE Testimony

Plaintiff also asserts that the VE testified that her limitation to simple, routine, and repetitive tasks, as prescribed by the ALJ, precluded the ability to carry out detailed oral or written instructions. ECF Dkt. #15 at 17. Continuing, Plaintiff states that, according to the DOT,
the jobs of folder and gasket inspector, which the VE opined she could perform, are Reasoning Level 2 jobs. *Id.* at 17-18. Plaintiff states that Reasoning Level 2 jobs require the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, deal with problems involving few concrete variables in or from standardized situations. *Id.* at 18 (citing DOT, Appendix C-1). According to Plaintiff, she could not perform the jobs of folder or gasket inspector under the ALJ's RFC finding. *Id.*

As for the job of cleaner, the third job which the VE found she could perform, Plaintiff asserts that the job is inconsistent with the ALJ's RFC finding, which stated that she must have no contact with the public. ECF Dkt. #15 at 18. Plaintiff argues that the job of cleaner requires at least some interaction with the public as the tasks associated with the job include "personal assistance to patrons." *Id.* Plaintiff also asserts that since the job of cleaner is performed at commercial establishments, Plaintiff "would almost certainly come into contact with members of the general public constantly throughout the workday." *Id.*

Defendant contends that Plaintiff's assertion that the jobs of folder and cleaner are Reasoning Level 2 jobs, and thus pose requirements inconsistent with the ALJ's limitation to "simple, routine, repetitive tasks," is without legal support. ECF Dkt. #17 at 16. Continuing, Defendant correctly states that Plaintiff relies on testimony from the VE, who answered affirmatively when asked if the limitation to simple, routine, repetitive tasks precluded the ability to carry out detailed oral or written instructions. *Id.* Defendant then cites to the Sixth Circuit's determination that:

-11-

> The Social Security regulations do not obligate the ALJ and consulting vocational experts to rely on the Dictionary's classifications. Because neither the Commissioner nor the VE has an obligation to employ the DOT, and there is no precedent that requires the Commissioner to align DOT "reasoning levels" with RFC classifications, [the plaintiff's] argument is without merit.

ECF Dkt. #17 at 16 (quoting *Monateri v. Comm'r of Soc. Sec.*, 436 Fed.Appx. 434, 446 (6th Cir. 2011) (internal citations omitted)).

Further, Defendant notes that this Court has held that a claimant's limitation to simple one-or-two step instructions and simple routine tasks was not inconsistent with the ability to perform jobs with the requirement of Reasoning Level 2. *Id.* at 17 (citing *Russell v. Comm'r of Soc. Sec.*, 1:13-cv-291, 2014 WL 1333262 (N.D. Ohio Mar. 31, 2014)). Like the plaintiff in *Russell*, Plaintiff attempts to establish that a direct correlation exists between the DOT and the SSA's regulations. As the Sixth Circuit explained in *Monateri*, and this Court found in *Russell*, the ALJ and VE were not obligated to employ the DOT and there is no precedent requiring the Defendant align the DOT reasoning levels with the RFC findings. Accordingly, Plaintiff's argument regarding the jobs of folder and gasket inspector is without merit.

Regarding her argument that the job of cleaner is inconsistent with the ALJ's limitation of no contact with the public, Plaintiff fails to provide adequate support for her conclusion that this job requires contact with the public. ECF Dkt. #15 at 18. Plaintiff cites the DOT code section for cleaner, specifically noting that the job requires that she "[c]lean[] rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories," and "render[] personal assistance to patrons." As to whether the occupation of cleaner requires contact with the public, Plaintiff speculates as to how the job would require contact, and Defendant speculates as to how the job would not require contact. *See* ECF Dkt. #15 at 18; ECF Dkt. #17 at 18. In any event, the Sixth Circuit has held:

> The ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-04p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that Plaintiff's counsel did not do so is not grounds for relief.

*Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 168-69 (6th Cir. 2009). Plaintiff does not assert that the ALJ failed to investigate the accuracy of the VE's testimony as to the job of

cleaner as mandated by SSR 00-04p, and a review of the hearing transcript does not reveal any apparent conflicts between the VE's testimony and the DOT. *See* Tr. at 90-98; SSR 00-04p. Accordingly, the obligation was on Plaintiff's counsel to cross-examine the VE to bring out any alleged conflicts between the testimony and the DOT. The fact that Plaintiff's counsel did not cross-examine the VE on this matter, and now offers speculative reasons for potential conflict between the VE's testimony and the ALJ's RFC finding, is not grounds for relief. *See Beinlich*, 345 Fed.Appx. at 168-69. For these reasons, Plaintiff's argument that the ALJ erred when relying on the VE's testimony is without merit.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: August 30, 2017                    ___*/s/George J. Limbert*_____
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE